THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| HALEY BREANNA BOCK-NIELSEN and JEAN GOLDSTEIN, Personal Representative of the Estate of Richard McKee, <br><br> Plaintiffs, <br><br> v. <br><br> THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Case No. 10-CV-04046-NKL |

**ORDER**

Before the Court is Plaintiffs Haley Breanna Bock-Nielsen and Jean Goldstein's Motion for Leave to File First Amended Complaint [Doc. # 42] and Defendant Northwestern Mutual Life Insurance Company's Motion for Judgment on the Pleadings [Doc. # 8 and Doc. # 6 in 10-CV-04047-NKL].[1] For the following reasons, the Court denies the Plaintiffs' motion to amend and grants the Defendant's motion for judgment on the pleadings.

**I. Background**

In January 2006, Richard McKee ("Richard") and Lorie McKee ("Lorie"), husband and wife, each purchased a life insurance policy from Northwestern Mutual Life Insurance

---

[1] Because 10-CV-04046-NKL and 10-CV-04047-NKL have been consolidated since the time of Northwestern Mutual's filing of separate motions for judgment on the pleadings, the Court will consider them together as one motion.

Company ("Northwestern Mutual"). In their policies, each named the other as the primary beneficiary. Richard named his sister, Elizabeth Stewart, as the contingent beneficiary in his policy. Lorie named her parents, Brenda Sue and Carl James Rentschler, as the contingent beneficiaries in her policy.

On January 10, 2008, Lorie intentionally shot and killed Richard. She then shot and killed herself. Northwestern Mutual subsequently paid the proceeds of Richard's and Lorie's policies to the named contingent beneficiaries. On February 10, 2010, Haley Breanna Bock-Nielsen, Richard's daughter, and Jean Goldstein, the personal representative of Richard's estate (collectively "the Plaintiffs") filed suit against Northwestern Mutual in the Circuit Court of Callaway County, Missouri, claiming that they were the proper recipients of the proceeds of Richard's policy. Bock-Nielsen filed a separate suit claiming that she was the proper recipient of the proceeds of Lorie's policy. Northwestern Mutual removed the cases to this Court and they were subsequently consolidated into one action.

On March 12, 2010, the Defendants filed motions for judgment on the pleadings in each of the now consolidated cases. On June 9, 2010, the Plaintiffs filed a motion for leave to amend their complaint.

## II. Discussion

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But "plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). "Futility is a valid basis for denying leave to amend." *Id.*

When considering a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the nonmoving party and grants all reasonable inferences from the pleadings in favor of the nonmoving party. *See Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Id.* (citation omitted). The standard of review on a motion for judgment on the pleadings under Rule 12(c) is essentially the same as on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See Wescott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court will consider the motions together. Both motions can be decided upon the Court's determination of whether the Plaintiffs' complaint, as amended, raises any issue of material fact and entitles Northwestern Mutual to judgment as a matter of law.

The parties agree to the basic facts of the tragedy from which this case arises: Lorie intentionally shot and killed Richard and then committed suicide. A close reading of the allegations contained in the Plaintiffs' proposed amended complaint reveals that they solely concern legal issues regarding the effect of the murder-suicide on the distribution of the proceeds of Richard's and Lorie's life insurance policies, as detailed below. To the extent the parties dispute the effect of the terms of the policies, this is a legal determination under

3

Missouri law. *See Four Seasons Lakesites, Inc. v. HRS Prop., Inc.*, No. SD-30110, 2010 WL 2882489, at *5 (Mo. Ct. App. July 23, 2010).

### A. Counts Concerning Richard McKee's Policy

#### 1. Counts I and II

Under the terms of Richard's life insurance policy, the contingent beneficiary — Richard's sister — was to receive payment if the primary beneficiary — Lorie — predeceased the insured. Although Lorie survived Richard, all parties agree that § 461.054.2 operates to disqualify Lorie from receiving the benefits of Richard's policy. The question is who takes payment following Lorie's disqualification: Richard's estate or the contingent beneficiary?

Under § 461.054.2, following a beneficiary's willful and unlawful killing of the insured, "[t]he beneficiary designation shall be given effect as if the disqualified beneficiary had disclaimed it." Section 461.048 of the Missouri nonprobate transfers law further provides that "[i]f a beneficiary of a nonprobate transfer disclaims in whole or in part the nonprobate transfer in the manner provided by law, then with respect to the disclaimed transfer, the disclaimant is treated as having predeceased the owner unless the beneficiary designation provides otherwise . . . ."

In Counts I and II of the proposed amended complaint, the Plaintiffs argue that the contingent beneficiary should not have received payment because the condition under which she was to receive payment under the policy — the non-survival of the primary beneficiary — did not occur. Although § 461.048 contradicts this argument, the Plaintiffs argue that §

4

461.048 does not apply in the life insurance context. Section 461.073, which defines the scope and application of the nonprobate transfers law, lists specific sections of Chapter 461 that "do not apply to property, money or benefits paid or transferred at death pursuant to a life or accidental death insurance policy . . . ." Section 461.048 is not among the sections listed. Missouri has recognized, as a rule of statutory construction, that "the express mention of one thing implies the exclusion of another." *State v. Dudley*, 202 S.W.3d 203, 206 (Mo. Ct. App. 2010). Following this rule of construction, the Court assumes that the Missouri legislature would have included § 461.048 among the sections listed in § 461.073 had it intended the statute not to apply in the life insurance context. This is also consistent with common sense because slayer statutes would be substantially less effective if life insurance proceeds were not covered.

The Plaintiffs also contend that § 461.048 cannot be reconciled with § 461.054.2 because the former refers to the life insurance policy "owner" while the latter refers to the "individual insured." This distinction is irrelevant in this case because Richard was both the owner of the policy and the individual insured. In addition, "statutes relating to the same subject are to be considered together and harmonized if possible so as to give meaning to all provisions of each." *Day v. Wright County*, 69 S.W.3d 485, 490 (Mo. Ct. App. 2000) (quoting *Cantwell v. Douglas County Clerk*, 988 S.W.2d 51, 55 (Mo. Ct. App. 1999)). It appears the legislature intended both statutes to apply in the context of life insurance even though § 461.048 only mentions owners. Because § 461.054.2 covers both owners and insureds and refers to disclaimers under § 461.048 without distinguishing between owners

and insureds, the Court concludes that § 461.048 is intended to be applied to both owners and insureds.

Accordingly, the Court finds that by operation of § 461.054 and § 461.048 the proper recipient of the proceeds of Richard's life insurance policy was the named contingent beneficiary.

### 2. Count III

In Count III of the proposed amended complaint, the Plaintiffs contend that public policy weighs in favor of directing payment to Richard's estate. This argument ignores the public policy expressed in § 461.054, § 461.048 and Missouri common law. In *Lee v. Aylward,* where the primary beneficiary of a life insurance policy killed the insured, the Missouri Supreme Court directed payment to the named contingent beneficiary rather than to the decedent's estate, noting that "only a few cases" held otherwise and declining to follow them. *See* 790 S.W.2d 462, 463 (Mo. 1990); *see also Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 476 (7th Cir. 1999) (noting that the approach taken by a majority of courts when the primary beneficiary is disqualified for murdering the policyholder is that the contingent beneficiary takes in place of the primary one).

### 3. Count IV

In Count IV of the proposed amended complaint, the Plaintiffs request a jury trial under § 461.054.3 in the alternative to the Court finding in their favor on Counts I-III. Subsection § 461.054.3 provides: "On petition of any interested person or the transferring entity, the trier of fact shall determine . . . whether subsection 2 of this section applies to

prevent any person from receiving any benefit of the nonprobate transfer. The trier of fact may mitigate the effect of subsection 1 or 2 on any person as the trier of fact determines justice requires. Any party may demand a jury trial." § 461.054.3

The Plaintiffs appear to contend that § 461.054.3 should be construed to grant the trier of fact the power to award a party not named in the insurance policy as a primary or contingent beneficiary the benefits of that policy, arguing that the interests of justice invoked by the statute weigh in favor of designating the Plaintiffs as "constructive trustees" of the proceeds.

The Court is aware of no case interpreting § 461.054.3 or a similar statutory provision in a context such as this one. When interpreting a statute, the court's goal is to determine "the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Gromer v. Matchett*, No. SD-29942, 2010 WL 2927943, at *2 (Mo. Ct. App. July 28, 2010) (quoting *Lonergan v. May*, 53 S.W.3d 122, 126 (Mo. Ct. App. 2001)). Statutory language "must be viewed in the context of the surrounding language" contained in the statute. *Wright-Jones v. Johnson*, 256 S.W.2d 177, 185 (Mo. Ct. App. 2008).

Considering § 461.054.3 in context, the Court finds that it does not give Plaintiffs a right to jury trial to "mitigate the effect" of subsection 2. The "effect" of subsection 2 is to prevent Lorie from receiving the benefits of Richard's life insurance policy. The Plaintiffs do not argue that but for the effect of subsection 2 they would have been entitled to the benefits. Even in the absence of a finding of a willful, unlawful killing, the Plaintiffs would

not be entitled to benefits.  Therefore, subsection 2 has no effect on the Plaintiffs for the trier of fact to mitigate.

Plaintiffs also argues that the evolution of Missouri's slayer statute demonstrates that anyone claiming an interest in insurance proceeds forfeited by the slayer statute, has a right to a justice hearing at which a jury can mitigate the effect of § 461.054.2.  The predecessor statute states:

> On petition of any interested person or the transferor, a civil jury shall determine if the disqualification imposed by this section applies to any person and may relieve any person to whom this section applies from the disqualification.

Nonprobate Transfers Law of Missouri § 35.2, 1989 Mo. Laws 980.  Plaintiff argues that this predecessor statute only guaranteed a justice hearing for the person disqualified.  By adopting the current version of § 461.054.2, the legislature intended the justice hearing to be available to anyone because the current version covers more persons than just the disqualified.  It is true that the predecessor statute only permitted a justice hearing for the slayer.  However, while the current version of § 461.054 does not limit a justice hearing to just the slayer, its purpose is only to mitigate the effect of subsection 2.  Plaintiffs' right to take the property was not affected by subsection 2 because they had no right to the property even before subsection 2 was applied.  Therefore, while the new statute permits more people to challenge the effect of subsection 2, they can only do so if they were affected by the disclaimer.

8

### B. Counts Concerning Lorie McKee's Policy

Under the terms of Lorie's policy, the contingent beneficiaries — Lorie's parents — were to receive payment if the primary beneficiary — Richard — predeceased the insured. In *Hughes v. Wheeler*, the Eighth Circuit Court of Appeals held that California's slayer statute, Cal. Prob. Code § 252, which functions like Missouri's in preventing the beneficiary from receiving the benefits of a life insurance policy after murdering the insured, "applies only to a policy on the life of the victim. There is absolutely nothing in the language suggesting that it should be applied to a policy on the life of the slayer . . . ." 364 F.3d 920, 924 (8th Cir. 2004).

#### 1. Count V

In Count V of the proposed amended complaint, the Plaintiffs allege that Lorie's actions "indicate an intent to benefit her parents." They contend that Lorie divested Richard of a purported interest in her life insurance policy and that the common law maxim that "no one should be allowed to profit from his own wrong" should prevent Lorie from benefitting by directing payment to her parents. Missouri courts have applied this equitable principle to prevent slayers from receiving property or other benefits as a result of their act. *See Thomas v. Evans*, 941 S.W.2d 872, 874-75 (Mo. Ct. App. 1997) (analyzing the contexts in which Missouri courts have applied the maxim). For the equitable principle to apply, the slayer must have received a "practical, substantial benefit." *Id.* at 876. The Plaintiffs bring to the Court's attention no theory under which

9

Lorie benefitted in any practical, substantial manner from the contingent beneficiaries' receipt of payment, regardless of her intent.[2]

### 2. Counts VI and VIII

In Counts VI and VIII of the proposed amended complaint, the Plaintiffs request, under § 461.054.3, that the trier of fact "mitigate the effect" of § 461.054.2 in regard to Lorie's policy and, alternatively, demand a jury trial. Section 461.054 does not apply to Lorie's policy. *See Hughes*, 364 F.3d at 924. These requests are denied.

### 3. Count VII

In Count VII of the proposed amended complaint, the Plaintiffs contend that Richard had a vested interest in Lorie's life insurance policy that passed to his estate upon his death. The Plaintiffs argue that a vested interest was created by virtue of (1) Lorie and Richard taking out policies on the same day and naming each other as the primary beneficiary, and (2) the "Marital Deduction Provision" of the policy, which states that "[t]he spouse of the Insured will have the power alone and in all events to appoint all amounts payable to the spouse under the policy" under certain conditions.

One of the stated conditions of the Marital Deduction Provision is that the spouse survives the insured, which did not occur. More broadly, under the terms of the policy, Richard's interest in the benefits was clearly contingent on his survival of Lorie. The

---

[2] Although the Plaintiffs' factual contentions are accepted as true for the purposes of this motion, the Court notes that if Lorie's intent was to direct payment to her parents, this could have been accomplished by changing the terms of the policy rather than by murder.

terms leave no doubt that upon the event of Richard predeceasing Lorie all proceeds were to be paid to the contingent beneficiaries. Richard's interest did not vest.

### C. Count IX

In Count IX of the proposed amended complaint, the Plaintiffs contend that Northwestern Mutual breached a purported duty to file an interpleader action and acted without due diligence, reasonable diligence and with negligence in paying the benefits of Richard's and Lorie's life insurance policies to the contingent beneficiaries.

Interpleader is used to protect disinterested stakeholders from incurring double liability by bringing adverse claimants into one action. *See generally* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1702. The Court finds no basis for compelling Northwestern to file an interpleader action.

For the foregoing reasons supporting payment to the contingent beneficiaries, the Court also finds no basis supporting the legal conclusion that Northwestern Mutual acted without due diligence, reasonable diligence, or with negligence.

## III. Conclusion

Accordingly, it is hereby ORDERED that the Plaintiffs' Motion for Leave to File First Amended Complaint [Doc. # 42] is DENIED. Northwestern Mutual's Motion for

Judgment on the Pleadings [Doc. # 8 and 10-CV-04047-NKL Doc. # 5] is GRANTED.

                                                                 s/ NANETTE K. LAUGHREY
                                                                 NANETTE K. LAUGHREY
                                                                 United States District Judge

Dated:  September 20, 2010
Jefferson City, Missouri